ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| RAFAEL IVÁN IRIARTE GRAÑA, por sí y en representación de la Sociedad Legal de Gananciales que compone con Marta Febo López<br><br>Parte Apelante<br><br>v.<br><br>PONCE HEALTH SCIENCES UNIVERSITY; FULANO DE TAL; MENGANO DE TAL; ASEGURADORAS<br><br>Parte Apelada | TA2026AP00347 | *Apelación,* procedente del Tribunal de Primera Instancia, Sala Superior de Ponce<br><br>Caso Núm.: PO2022CV00511<br><br>Sala: 601<br><br>Sobre: Discrimen en el Trabajo, Violación a Derechos Civiles y Constitucionales, Despido Injustificado, Acoso Laboral, Artículo 74 del Código Civil |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y la Jueza Prats Palerm.

Monge Gómez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de abril de 2026.

Compareció ante este Tribunal la parte apelante, el Sr. Rafael Iván Iriarte Graña (en adelante, el "señor Iriarte Graña"), la Sra. Marta Febo López (en adelante, la "señora Febo Lopez") y la Sociedad Legal de Gananciales compuesta por ambos (en adelante, "los Apelantes"), mediante recurso de apelación presentado el 6 de abril de 2026. Nos solicitaron la revocación de la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Ponce (en adelante, "TPI"), el 8 de enero de 2026 y notificada el 15 del mismo mes y año. Dicho dictamen fue objeto de una "**Moción de Reconsideración y Solicitud de Determinaciones de Hechos Adicionales**" presentada por los Apelantes, la cual fue declarada "No Ha Lugar" mediante *Resolución Interlocutoria* de 6 de marzo de 2026.

Por los fundamentos que expondremos a continuación, *confirmamos* la *Sentencia* apelada.

**I.**

Los hechos que dan origen al presente caso se remontan al 4 de marzo de 2022, fecha en la cual los Apelantes presentaron una "**Demanda**" en contra de Ponce Health Sciences University (en adelante "Ponce Health"), el Lcdo. Manuel Porro Vizcarra, la Lcda. Yesenia Varela y otros codemandados de nombres desconocidos, sobre discrimen en el empleo, violación de derechos civiles, despido injustificado y acoso laboral. En síntesis, alegaron que el señor Iriarte Graña laboró para Ponce Health desde el año 1987 hasta enero de 2022, cuando fue separado de su empleo tras negarse a cumplir con la política institucional de vacunación compulsoria contra el COVID-19. Sostuvieron que dicha negativa respondió a convicciones religiosas sinceramente sostenidas, por lo que oportunamente solicitó una exención religiosa y acomodo razonable.

Adujeron que, aun cuando el señor Iriarte Graña presentó una declaración jurada explicando la naturaleza de sus creencias y las razones de su objeción, la universidad continuó requiriendo información adicional y eventualmente denegó la solicitud, sin expresar fundamentos claros. Añadieron que, luego de colocar al señor Iriarte Graña en una licencia sin sueldo por varios períodos consecutivos, Ponce Health procedió finalmente con su despido. En virtud de ello, solicitaron indemnización por daños, salarios dejados de percibir, daños punitivos, honorarios de abogado y, en la alternativa, la mesada correspondiente.

En respuesta a lo anterior, el 22 de marzo de 2022, los licenciados Manuel Porro Vizcarra y Yesenia M. Varela Colón presentaron una "**Moción solicitando la desestimación de la demanda, la descalificación del abogado de la parte demandante y honorarios de abogado por temeridad**". Posteriormente, el 22 de abril de 2022, el foro de instancia dictó una *Sentencia Parcial* mediante la cual declaró "Ha Lugar" a la referida moción.

Más adelante, el 9 de mayo de 2022, Ponce Health presentó su "**Contestación a Demanda**", mediante la cual negó la mayoría de las alegaciones formuladas en su contra. En esencia, sostuvo que la política de vacunación fue adoptada durante la emergencia provocada por la pandemia del COVID-19, en cumplimiento con las órdenes administrativas vigentes y con el propósito de proteger a estudiantes, empleados y visitantes de la institución. Asimismo, alegó que la política aplicó uniformemente a todo el personal y contemplaba procedimientos para solicitar exenciones médicas o religiosas. Expresó, además, que la solicitud del señor Iriarte Graña fue evaluada y posteriormente denegada, y que éste permaneció en licencia sin sueldo por más de noventa (90) días sin cumplir con los requisitos de vacunación establecidos, razón por la cual fue dado de baja administrativa por justa causa al amparo de la Ley Núm. 80, *infra.*

Luego, el 11 de julio de 2022, el foro primario emitió una *Sentencia Parcial* mediante la cual archivó la causa de acción instada contra University Ventures Funds Management, LLC, tras la presentación de una "**Solicitud de Desistimiento Sin Perjuicio al amparo de la Regla 39.1 de Procedimiento Civil**" por parte de los Apelantes. Posteriormente, el 14 de agosto de 2023, los Apelantes presentaron una "**Demanda Enmendada**", a los fines de acumular como codemandada a Tiber Health, Public Benefit Corporation.

Así las cosas, el 29 de enero de 2025, Ponce Health presentó una "**Moción Solicitando se Dicte Sentencia por la Vía Sumaria**", (en adelante, "Moción de Sentencia Sumaria") mediante la cual sostuvo que no existían controversias materiales de hechos que impidieran la resolución sumaria del pleito instado en su contra. En particular, argumentó que los Apelantes no tenían derecho a una reclamación por incumplimiento contractual, toda vez que el contrato de empleo era por tiempo indefinido y la Ley Núm. 80, *infra*, proveía el remedio exclusivo respecto al alegado despido injustificado. Igualmente, sostuvo que no medió discrimen por razón religiosa ni existía en nuestro ordenamiento una categoría protegida basada en el alegado estado de vacunación.

El 30 de enero de 2025, el TPI notificó una *Orden* mediante la cual dispuso que la referida *Moción de Sentencia Sumaria* sería atendida una vez culminara el descubrimiento de prueba, sin perjuicio de que Ponce Health presentara posteriormente una nueva moción dispositiva. Ulteriormente, el 7 de julio de 2025, Ponce Health presentó la *Moción de Sentencia Sumaria* que motiva nuestra consideración. Mediante dicho escrito, reiteró que el despido obedeció exclusivamente al incumplimiento del señor Iriarte Graña con los requisitos de la política de vacunación y a su negativa de proveer la información solicitada para evaluar la exención religiosa reclamada. Añadió que actuó conforme a sus reglamentos internos y dentro de las prerrogativas patronales reconocidas por nuestro ordenamiento jurídico.

En oposición, el 6 de agosto de 2025, los Apelantes presentaron su "**Moción en Oposición a Solicitud Sentencia Sumaria**" mediante la cual sostuvieron que Ponce Health no había logrado demostrar de qué forma le era oneroso acomodar las convicciones religiosas y personales del señor Iriarte Graña. Por su parte, el 19 de agosto de 2025, Ponce Health presentó su "**Réplica a Moción en Oposición a Solicitud Sentencia Sumaria**" solicitando que ciertos hechos se dieran por admitidos, a lo cual los Apelantes respondieron mediante escrito intitulado "**Dúplica a la Réplica de la Moción en Oposición a Solicitud Sentencia Sumaria presentada por el Demandante**" presentada el 11 de septiembre de 2025.

Finalmente, el 15 de enero de 2026, el TPI dictó *Sentencia Final* mediante la cual declaró "Ha Lugar" la "**Moción de Sentencia Sumaria**" presentada por Ponce Health y desestimó las reclamaciones instadas por los Apelantes. Inconformes con dicho dictamen, los Apelantes presentaron una "**Moción de Reconsideración y Solicitud de Determinaciones de Hechos Adicionales**", la cual fue declarada "No Ha Lugar" mediante *Resolución interlocutoria* emitida el 6 de marzo de 2026.

Aún inconforme con lo anteriormente resuelto, los Apelantes acudieron ante nos mediante el recurso de epígrafe, en el que señalaron la comisión de los siguientes errores:

1. Erró el Tribunal de Primera Instancia al adjudicar sumariamente la totalidad del pleito sin disponer ni hacer pronunciamiento alguno sobre la moción de sentencia sumaria parcial del apelante, debidamente presentada, sustentada y sometida para adjudicación, en contravención a la Regla 36 de Procedimiento Civil y la jurisprudencia aplicable.

2. Erró el Tribunal de Primera Instancia al excluir la Oposición del apelante a la moción de sentencia sumaria de PHSU por supuesto incumplimiento con la Regla 36.3(b)(2), sin identificar defecto específico alguno, y al resolver el caso sin considerar material sumario que controvertía hechos esenciales y pertinentes.

3. Erró el Tribunal de Primera Instancia al no aplicar el estándar correcto de acomodo razonable por motivos religiosos establecido en el Título VII del Civil Rights Act de 1964, al omitir analizar si el apelante acreditó los elementos de una reclamación por falta de acomodo religioso y al resolver la controversia bajo el esquema de trato desigual de McDonnell Douglas, sin exigir al patrono demostrar dificultad excesiva conforme a Groff v. DeJoy, 600 U.S. 447 (2023).

4. Erró el Tribunal de Primera Instancia al desestimar sumariamente la reclamación de despido injustificado al amparo de la Ley Núm. 80, pese a que el récord revelaba controversias reales y sustanciales sobre la razonabilidad de la política aplicada al apelante, la necesidad de presencialidad en sus funciones, la disponibilidad de alternativas menos onerosas y, en fin, la existencia o no de justa causa para la terminación.

El 30 de abril de 2026, compareció ante este Tribunal Ponce Health mediante "**Alegato en Oposición de la Parte Apelada**".

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A.**

El propósito de las Reglas de Procedimiento Civil es proveerles a las partes que acuden a un tribunal una "solución justa, rápida y económica de todo procedimiento". Batista v. Sucn. Batista *et al*, 216 DPR ___; 2025 TSPR 93. Así, la Regla 36 del mencionado cuerpo procesal atiende lo referente al mecanismo de sentencia sumaria. A la luz de sus disposiciones, se dictará sentencia si de "las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las

declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente, y que como cuestión de derecho el tribunal debe dictar la sentencia sumaria a favor de la parte promovente". Regla 36.3 de Procedimiento Civil, 32 LPRA, Ap. V, R. 36.3; Negrón Castro y otros v. Soler Bernardini y otros, 216 DPR ____ (2025); 2025 TSPR 96.

En ese sentido, se considera un hecho material o esencial, "aquel que pueda afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable". Oriental Bank v. Caballero García, 212 DPR 671, 679 (2023). Cabe señalar que el juzgador no está limitado a los hechos o documentos que se produzcan en la solicitud, sino que puede tomar en consideración todos los documentos que obren en el expediente del tribunal. S.L.G. Szendrey-Ramos v. Consejo Titulares, 184 DPR 133, 167 (2011).

Solamente se dictará sentencia sumaria en casos en los cuales el tribunal cuente con la verdad de todos los hechos necesarios para resolver la controversia y surja claramente que la parte promovida por el recurso no prevalecerá. Oriental Bank v. Caballero García, *supra*, pág. 678. Sin embargo, el tribunal no podrá dictar sentencia sumaria cuando: (1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la Demanda que no han sido refutadas; (3) surja de los propios documentos que acompañan la moción una controversia real sobre algún hecho material; o (4) la moción no procede como cuestión de derecho. S.L.G. Szendrey-Ramos v. Consejo de Titulares, *supra*, pág. 168. Para prevalecer, el promovente de este recurso debe presentar una moción fundamentada en declaraciones juradas o en cualquier evidencia que demuestre la inexistencia de una controversia sustancial de hechos materiales sobre la totalidad o parte de la reclamación. Oriental Bank v. Caballero García, *supra*, pág. 678.

Por su parte, la parte promovida por una moción de sentencia sumaria debe señalar y refutar los hechos materiales que entiende están en controversia y que son constitutivos de la causa de acción del

demandante. <u>Rosado Reyes v. Global Healthcare,</u> 205 DPR 796, 808 (2020); <u>Oriental Bank v. Perapi et al</u>., 192 DPR 7, 25-26 (2014). Así, la parte que se opone a que se dicte sentencia sumaria en su contra debe controvertir la prueba presentada y no cruzarse de brazos. <u>ELA v. Cole</u>, 164 DPR 608, 626 (2005). No puede descansar en meras afirmaciones contenidas en sus alegaciones ni tomar una actitud pasiva, sino que está obligada a presentar contradeclaraciones juradas y/o contradocumentos que pongan en controversia los hechos presentados por el promovente. <u>Oriental Bank v. Caballero García</u>, *supra*, pág. 8; <u>Roldán Flores v. M. Cuebas *et al*</u>., 199 DPR 664, 677 (2018).

Adicionalmente, en <u>León Torres v. Rivera Lebrón</u>, 204 DPR 20, 47 (2020), el Tribunal Supremo resolvió que ninguna de las partes en un pleito puede enmendar sus alegaciones a través de la presentación de una solicitud de sentencia sumaria o su oposición. Así que, según lo expresa el propio tribunal, "la parte que se opone a una solicitud de sentencia sumaria no puede traer en su oposición, de manera colateral, defensas o reclamaciones nuevas ajenas a los hechos consignados en sus alegaciones, según consten en el expediente del tribunal al momento en que se sometió la moción dispositiva en cuestión". <u>Íd</u>., pág. 54.

Según las directrices pautadas por nuestro más alto foro, una vez se presenta la solicitud de sentencia sumaria y su oposición, el tribunal deberá: (1) analizar todos los documentos incluidos en ambas mociones y aquellos que obren en el expediente del tribunal; y (2) determinar si la parte opositora controvirtió algún hecho material o si hay alegaciones en la demanda que no han sido refutadas en forma alguna por los documentos. <u>Abrams Rivera v. ELA, DTOP y otros</u>, 178 DPR 914, 932 (2010).

Al examinar la procedencia de una moción que solicita disponer de un caso sumariamente, el tribunal no tiene que sopesar la evidencia y determinar la veracidad de la materia, sino que su función estriba en determinar la existencia o no de una controversia genuina, la cual amerite ser dilucidada en un juicio plenario. <u>JADM v. Centro Comercial Plaza Carolina</u>, 132 DPR 785, 802-803 (1983). Además de que "[t]oda inferencia

razonable que se realice a base de los hechos y documentos presentados, en apoyo y en oposición a la solicitud de que se dicte sentencia sumariamente, debe tomarse desde el punto de vista más favorable al que se opone a ésta". ELA v. Cole, 164 DPR 608, 626 (2005).

En el caso de revisar la determinación del TPI respecto a una sentencia sumaria, este foro apelativo se encuentra en la misma posición que el foro de instancia para evaluar su procedencia. Rivera Matos *et al.* v. Triple-S *et al.*, 204 DPR 1010, 1025 (2020); Meléndez González *et al.* v. M. Cuebas, 193 DPR 100, 118 (2015). La revisión que realice el foro apelativo deberá ser *de novo* y estará limitada a solamente adjudicar los documentos presentados en el foro apelado. Vera v. Dr. Bravo, 161 DPR 308, 335 (2004)*.* De modo que las partes que recurren a un foro apelativo no pueden litigar asuntos que no fueron traídos a la atención del foro de instancia. Íd. En adición a esta limitación, se ha aclarado que al foro apelativo le está vedado adjudicar los hechos materiales esenciales en disputa, porque dicha tarea le corresponde al foro de primera instancia. Íd. págs. 334-335.

En Meléndez González *et al.* v. M. Cuebas, *supra*, nuestro más Alto Foro delimitó los pasos del proceso a seguir para la revisión de la sentencia sumaria por parte de este foro revisor, el cual consiste de: (1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra*, y la jurisprudencia le exigen al foro primario; (2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra*; (3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.4, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles son incontrovertibles; (4) y, de encontrar que los hechos materiales realmente son incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho a la controversia. Íd., págs. 118-119.

Conviene desde ahora destacar que el Tribunal Supremo también ha expresado que es desaconsejable utilizar la moción de sentencia

sumaria en casos en donde existe controversia sobre elementos subjetivos, de intención, propósitos mentales o negligencia. Ramos Pérez v. Univisión de P.R, 178 DPR 200, 2019 (2010); Carpets & Rugs v. Tropical Reps, 175 DPR 615, 638 (2009). No obstante, "cuando de los documentos a ser considerados en la solicitud de sentencia sumaria surge que no existe controversia en cuanto a los hechos materiales" nada impide que se utilice la sentencia sumaria en casos donde existen elementos subjetivos o de intención. Ramos Pérez v. Univisión de P.R, *supra*, pág. 219.

**B.**

Con el fin de proteger el derecho de los empleados a la tenencia de su empleo, la Asamblea Legislativa aprobó la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, conocida como la "Ley Sobre Despidos Injustificados", 29 LPRA sec. 185a *et seq*. En nuestro sistema jurídico, el contrato de servicios que concretiza una relación obrero-patronal se constituye como el medio principal de sustento para los empleados y sus dependientes. Díaz v. Wyndham Hotel Corp., 155 DPR 364, 374 (2001). Debido a ello, existe un interés estatal apremiante para reglamentar las relaciones obrero-patronales, de forma tal que las mismas se enmarquen en una política pública enfocada en salvaguardar los derechos de los trabajadores. Íd. De conformidad con lo anterior, se incorporó en la Ley Núm. 80, *supra*, el requisito de "justa causa" como medida limitativa en toda causa de acción por despido. Por tanto, nuestra jurisprudencia ha establecido que este estatuto siempre debe ser interpretado de la forma más liberal y favorable al empleado. Jusino *et als.* v. Walgreens, 155 DPR 560, 571 (2001).

Así pues, "todo empleado de comercio, industria o cualquier otro negocio o sitio de empleo, que sea contratado sin tiempo determinado y trabaje mediante remuneración de alguna clase, tendrá derecho a recibir de su patrono una indemnización cuando sea despedido de su empleo sin que haya mediado justa causa". Ortiz Ortiz v. Medtronic, *supra*, pág. 771. Para ser acreedor del remedio y de los beneficios que instituye la Ley Núm. 80, *supra*, el empleado separado de su cargo debe cumplir con los

siguientes requisitos: (1) la existencia de una relación obrero-patronal remunerada; (2) que el empleado haya sido contratado por tiempo indeterminado; y (3) que el empleado haya sido despedido sin que medie justa causa. C. Zeno Santiago y otros, Tratado de Derecho del Trabajo, San Juan, Puerto Rico, Publicaciones JTS, 2003, T. I, pág. 98 (énfasis suplido).

Nótese que nuestro ordenamiento jurídico cobija el poder de dirección empresarial, **al reconocerles a los patronos el derecho de despedir a sus empleados, por cualquier razón no discriminatoria**. Díaz v. Wyndham Hotel Corp., *supra*, pág. 377. Sobre el particular, cabe destacar que las circunstancias que contempla el estatuto en cuanto a lo que se entiende como causa que justifique el despido no son taxativas y que constituye justa causa para el despido aquella que está vinculada a la ordenada marcha y normal funcionamiento de una empresa. Srio. del Trabajo v. G.P. Inds., Inc., 153 DPR 223, 243 (2001).

En específico, la Ley Núm. 80, *supra*, define justa causa como "aquella que no esté motivada por razones legalmente prohibidas y que no sea producto del mero capricho del patrono". 29 LPRA sec. 185b. Conforme al poder de dirección empresarial y para garantizar el buen funcionamiento de la empresa, nuestro ordenamiento permite que los patronos adopten normas razonables y los reglamentos que entiendan sean necesarios, y en las que se definan las faltas que, por su gravedad, podrían acarrear el despido como sanción. SLG Torres Álvarez v. Centro de Patología Avanzada, 193 DPR 920, 930-931 (2015); *véase además*, Art. 2 de la Ley Núm. 80, 29 LPRA sec. 185b. Así pues, adicional a las circunstancias establecidas en ley, la violación a las normas o reglamentos adoptados podrían ser motivo justificado para el despido de un trabajador si el patrono prueba que:  (1) la violación a los reglamentos es reiterada; (2) las reglas y los reglamentos son razonables; (3) se han suministrado oportunamente copia escrita de estas reglas y estos reglamentos al trabajador, y (4) el despido del empleado no se haga por mero capricho del patrono o sin una razón relacionada con el buen y normal funcionamiento del

establecimiento. <u>Feliciano Martes v. Sheraton</u>, 182 DPR 368, 381-382 (2011).

**III.**

En el presente caso, los Apelantes nos solicitaron la revocación de la *Sentencia* del TPI en la que se declaró "Ha Lugar" la "**Moción de Sentencia Sumaria**" presentada por Ponce Health.

Los señalamientos de error esgrimidos están íntimamente relacionados, por lo que se tratarán de forma conjunta en la discusión. En esencia, los Apelantes sostienen que el TPI erró al: (1) adjudicar sumariamente el pleito sin resolver una moción pendiente presentada por los Apelantes; (2) excluir su oposición a la solicitud de sentencia sumaria de Ponce Health Sciences University; (3) no aplicar el estándar correcto sobre acomodo religioso, bajo el Civil Rights Act of 1964; y (4) al desestimar la reclamación al amparo de la Ley Núm. 80, *supra*, pese a alegadas controversias materiales de hecho sobre la existencia de justa causa para el despido del señor Iriarte Graña. **Es decir, las únicas controversias traídas ante nuestra consideración están relacionadas con la determinación del foro *a quo* de desestimar la causa de acción de discrimen y de despido injustificado. No existe planteamiento impugnatorio relacionado con el dictamen desestimatorio de la reclamación de hostigamiento y persecución laboral**.

Según adelantáramos, al momento de revisar una determinación del foro de instancia respecto a una solicitud de sentencia sumaria, estamos llamados a realizar una revisión de *novo* y limitarnos únicamente a adjudicar las controversias con los documentos que obran en el expediente ante el foro *a quo*. Del análisis de la prueba que se presentó ante el TPI, determinamos que sobre los siguientes hechos esenciales y pertinentes no existe controversia:

1. El señor Iriarte Graña, por sí y en representación de la sociedad legal de gananciales compuesta con Marta Febo López, es mayor de edad, vecino de Ponce y médico de profesión.

2. El señor Iriarte Graña laboró para Ponce Health desde 1987 hasta el 4 de octubre de 2021, fecha en que se

acogió a una licencia sin sueldo conforme a la política institucional de vacunación contra el COVID-19.

3. Tiber Health, Public Benefit Corporation es una corporación autorizada a hacer negocios en Puerto Rico y opera bajo el nombre de Ponce Health.

4. Durante sus últimos cuatro años de empleo, el señor Iriarte Graña ocupó el puesto de Decano Auxiliar para Desarrollo de Carrera o Desarrollo Profesional.

5. Entre sus funciones principales se encontraba orientar y reunirse con estudiantes de medicina respecto a residencias, especialidades y planificación profesional, así como preparar y remitir evaluaciones académicas a programas de residencia.

6. Para el año 2021, su supervisora era la Dra. Jéssica González, Decana Asociada de Asuntos Clínicos y Facultad.

7. El desempeño de sus funciones requería reuniones presenciales con estudiantes, por entenderse que el contacto directo resultaba más efectivo.

8. A raíz de la pandemia del COVID-19, durante marzo de 2020, se declararon emergencias y restricciones gubernamentales en Puerto Rico, incluyendo cierres y toques de queda.

9. Como consecuencia de ello, desde el 16 de marzo de 2020 cesaron las operaciones presenciales en Ponce Health y las clases pasaron a modalidad remota.

10. El 19 de julio de 2021, la universidad informó que los estudiantes debían cumplir con requisitos de vacunación y pruebas para regresar presencialmente en el semestre de otoño de 2021.

11. El 22 de julio de 2021, el entonces Secretario de Salud de Puerto Rico, Carlos Mellado López, emitió la Orden Administrativa Núm. 2021-509, requiriendo pruebas de vacunación al personal docente y no docente de instituciones educativas, salvo excepciones de motivos religioso y/o médicos, según establecidas en la Ley Núm. 25 de 25 de septiembre de 1983, según enmendada.

12. El 28 de julio de 2021, Ponce Health notificó su Política de Vacunación contra el COVID-19, aplicable a todo el personal docente y no docente.

13. La política disponía que la institución asumiría el costo de las vacunas y el tiempo utilizado para vacunarse.

14. Asimismo, establecía que los empleados que interesaran solicitar exención médica o religiosa debían completar una solicitud de acomodo y remitirla a oficina de recursos humanos para iniciar el proceso interactivo correspondiente.

15. El formulario de acomodo religioso advertía que la universidad podía requerir documentación de apoyo

relacionada con las creencias o prácticas religiosas invocadas.

16. Cuando el motivo para solicitar el acomodo se basara en creencias religiosas era necesario que el líder de la iglesia debía suscribir el formulario bajo juramento ante notario público.

17. El formulario establecía que dicho líder de la iglesia debía describir la creencia o práctica religiosa en la cual se basaba el acomodo.

18. El formulario disponía de un área para que el líder proveyera alternativas de acomodo, de acuerdo a las necesidades.

19. El procedimiento institucional disponía que todo empleado no vacunado y sin exención aprobada sería colocado en licencia sin sueldo inicial de treinta (30) días, prorrogable hasta noventa (90) días en total, tras lo cual podría ser despedido de persistir el incumplimiento.

20. La política de vacunación de Ponce Health fue preparada por un comité interno y revisada por la señora Waleska Murphy y la señora Aixa Ramos.

21. Dicho comité estaba integrado por varios funcionarios y empleados de la institución, incluyendo personal administrativo y académico.

22. El 5 de agosto de 2021, el entonces gobernador de Puerto Rico, Hon. Pedro Pierluisi, emitió una orden ejecutiva requiriendo vacunación contra el COVID-19 a empleados de ciertas facilidades de salud, sujeto a excepciones médicas o religiosas.

23. El 20 de agosto de 2021, el señor Iriarte Graña solicitó una exención religiosa a la vacuna contra el COVID-19 y entregó el formulario correspondiente junto con una declaración jurada en apoyo a su petición suscrita por él mismo.

24. En esa ocasión, expresó que no se oponía a todas las vacunas, pero tenía reservas respecto a algunas disponibles en ese momento y manifestó interés en otras alternativas.

25. El 26 de agosto de 2021, la señora Aixa Ramos le requirió información adicional para evaluar la solicitud, incluyendo su postura sobre otras vacunas y documentación religiosa.

26. Ese mismo día, el señor Iriarte Graña respondió que su declaración jurada contenía la información pertinente.

27. Posteriormente, la señora Ramos insistió en varias ocasiones en obtener la información adicional solicitada.

28. El 8 de septiembre de 2021, se le concedió hasta el 10 de septiembre de 2021 para contestar, advirtiéndosele que debía reportarse vacunado a trabajar.

29. En respuesta, el señor Iriarte Graña reiteró que no estaba dispuesto a vacunarse.

30. El 9 de septiembre de 2021, remitió un escrito indicando que no podía expresarse categóricamente sobre todas las vacunas y que cualquier decisión tendría que evaluarse individualmente.

31. El 10 de septiembre de 2021, Ponce Health notificó que la solicitud de acomodo no cumplía con los requisitos exigidos. No obstante, autorizó trabajo remoto hasta el 1 de octubre de 2021 y ordenó que se reportara presencialmente vacunado el 4 de octubre de 2021.

32. El 30 de septiembre de 2021, el licenciado Adrián Díaz Díaz cursó comunicación alegando que el señor Iriarte Graña había cumplido con los requisitos para la exención religiosa.

33. El 4 de octubre de 2021, la señora Ramos informó que, al no presentarse vacunado, sería colocado en licencia sin sueldo por treinta (30) días.

34. El 12 de noviembre de 2021, dicha licencia fue extendida por treinta (30) días adicionales al no haberse presentado evidencia de vacunación.

35. Luego de ello, el señor Iriarte Graña no sometió evidencia adicional relacionada con vacunación.

36. El 13 de enero de 2022, se le notificó su baja administrativa y la opción de continuar la cubierta médica bajo COBRA.

37. El comité interno de Ponce Health determinó que el señor Iriarte Graña no demostró una sincera convicción religiosa que justificara la exención solicitada.

38. Durante 2021 y años posteriores, el señor Iriarte Graña publicó escritos, compareció en medios y participó en vistas legislativas expresando críticas al manejo de la pandemia, reservas sobre ciertas vacunas y oposición a la vacunación compulsoria.

39. En dichas comparecencias públicas no invocó fundamentos religiosos para oponerse a la vacuna del COVID-19.

40. Durante los hechos pertinentes, Ponce Health contaba con un protocolo interno contra el acoso laboral; sin embargo, el señor Iriarte Graña no presentó querella alguna bajo dicho procedimiento.

Establecido lo anterior, nos dirigimos a analizar los señalamientos de error esgrimidos. En resumidas cuentas, los Apelantes sostienen que los dogmas de la inspiración religiosa que practica el señor Iriarte Graña confligen con la vacunación compulsoria de la vacuna contra el COVID-19. Igualmente, argumentan que la cuestión de si una creencia religiosa es sinceramente sostenida no puede adjudicarse sumariamente.

Conforme adelantáramos en los acápites anteriores, en nuestro ordenamiento jurídico procede dictar sentencia sumaria si conforme a la evidencia presentada, no existe controversia real y sustancial en cuanto a hechos esenciales y pertinentes del caso. 32 LPRA, Ap. V, R. 36.3. Un hecho material es aquel que tiene el potencial de impactar el resultado de la reclamación. Oriental Bank v. Caballero García, *supra*, pág. 679. Para ello, el Tribunal debe tener a su disposición todos los hechos necesarios para resolver la controversia. Íd., pág. 678. Esto es, un tribunal no puede disponer de un caso por la vía sumaria cuando existan hechos fundamentales controvertidos. SLG Szendrey-Ramos v. Consejo de Titulares, *supra*, pág. 168.

Tras analizar detenida y comprensivamente los documentos que obran en el expediente, incluyendo la "**Demanda**", la *Moción de Sentencia Sumaria*, su correspondiente *Oposición,* la *Réplica*, la *Dúplica y* los documentos anejados a dichas mociones, hemos arribado a la conclusión de que el TPI actuó correctamente al disponer del caso por la vía sumaria. Nos explicamos.

De entrada, es menester destacar que el señor Iriarte Graña laboró por décadas para Ponce Health y ocupaba un puesto de alta responsabilidad académica y administrativa, cuyas funciones requerían interacción constante con estudiantes de medicina, orientación profesional individualizada y participación directa en procesos sensitivos relacionados con programas de residencia. Del propio récord surge que el contacto presencial con los estudiantes resultaba más efectivo para el adecuado desempeño de sus funciones. Ello cobra particular importancia al evaluar la razonabilidad de las medidas implantadas por la institución durante el periodo pertinente.

Igualmente, no puede perderse de perspectiva que, para el año 2021, Puerto Rico y el resto del mundo aún enfrentaban los efectos de la pandemia provocada por el COVID-19. Dentro de ese contexto, tanto el Gobierno de Puerto Rico como otras autoridades competentes emitieron directrices y órdenes administrativas dirigidas a proteger la salud pública

mediante medidas de vacunación en sectores sensitivos, incluyendo instituciones educativas y entornos vinculados a servicios de salud. Sobre este particular, el entonces Secretario de Salud emitió la Orden Administrativa Núm. 2021-509, requiriendo pruebas de vacunación al personal docente y no docente de instituciones educativas, salvo excepciones de motivos religioso y/o médicos. En armonía con ello, Ponce Health adoptó una política de vacunación aplicable uniformemente a su personal docente y no docente, contemplando expresamente mecanismos de exención por razones médicas o religiosas y un proceso interactivo para evaluar tales solicitudes.

Contrario a lo planteado por los Apelantes, del expediente no surge actuación arbitraria por parte de la referida universidad. Por el contrario, la prueba documental demuestra que la institución recibió la solicitud del señor Iriarte Graña, examinó la documentación presentada y mediante múltiples comunicaciones cursadas por la señora Aixa Ramos, procuró obtener información adicional que entendía necesaria para evaluar la sinceridad y alcance de la exención religiosa reclamada. Lejos de rechazar sumariamente la petición, Ponce Health sostuvo un intercambio continuo con el Apelante y le concedió oportunidades adicionales para complementar su solicitud.

Adicionalmente, notamos que del legajo apelativo surge con meridiana claridad que desde el inicio el señor Iriarte Graña incumplió con los requisitos impuestos por la política de vacunación del patrono, al no presentar la solicitud juramentada ante notario público por el líder de su iglesia, en donde se detallaran las razones específicas bajo las cuales fundamentó su solicitud. Pero aun si ignoráramos esa realidad, del propio récord surge que el señor Iriarte Graña no contestó de forma directa varias interrogantes medulares relacionadas con su postura frente a otras vacunas y los fundamentos específicos de su objeción que permitiera al comité evaluador de su solicitud estar en mejor posición de evaluar la misma, de conformidad con la propia política de vacunación. Más aún,

admitió que no se oponía necesariamente a toda vacunación y que estaría dispuesto a vacunarse dependiendo del tipo de vacuna disponible.

La referida circunstancia reviste especial importancia, pues la controversia no gira en torno al derecho de una persona a disentir de determinada política pública, sino a si el señor Iriarte Graña acreditó una creencia religiosa que obligara al patrono a conceder la exención solicitada. El comité evaluador de Ponce Health concluyó que no se demostró tal requisito, determinación que encuentra apoyo en el expediente y no fue refutada con prueba competente y suficiente que generara controversia real de hechos materiales. De hecho, el expediente demuestra un incumplimiento constante por parte del señor Iriarte Graña con una política institucional que se instituyó a raíz de una directriz administrativa del Gobierno de Puerto Rico, por conducto del Departamento de Salud. Nótese, pues, que estamos ante un caso en el que el Apelante eligió no contestar las comunicaciones que les fueron cursadas para completar una solicitud que, a todas luces, era instrumental para concluir si el señor Iriarte Braña podía o no retomar las labores en su trabajo.

Así pues, somos de la opinión de que Ponce Health demostró lo siguiente: (1) una reiterada violación de la política de vacunación debidamente adoptada; (2) que dicha política es razonable; (3) que el señor Iriarte Graña conocía de la existencia de dicha política, y que (4) el despido de éste no se hizo por mero capricho del patrono y respondió a una razón relacionada con el buen y normal funcionamiento del establecimiento que aplicaba a todos los empleados docentes y no docentes.

Tampoco nos persuade el planteamiento de que la referida universidad estaba obligada a mantener indefinidamente un acomodo remoto. Del expediente surge que el trabajo presencial era considerado necesario para el puesto ocupado por el Apelante y, aun así, la institución le permitió continuar temporalmente de forma remota hasta el 1 de octubre de 2021, como medida transitoria mientras culminaba la evaluación correspondiente y el señor Iriarte Graña cumpliera con proveer o facilitar toda la información necesaria para evaluar su solicitud. Posteriormente, al

no cumplir con el requisito institucional ni acreditar exención aprobada, se le colocó en licencia sin sueldo conforme al propio procedimiento establecido por la política institucional.

Más aún, Ponce Health no procedió inmediatamente al despido. Primero concedió una licencia inicial de treinta días, luego una extensión adicional y finalmente agotó el término máximo contemplado por su normativa interna antes de cursar la baja administrativa. Tal secuencia demuestra un curso de acción escalonado, razonable y consistente con la política previamente notificada a todos los empleados, y demuestra palmariamente que el señor Iriarte Graña incumplió con su contrato de empleo al dejar de proveer información esencial para adjudicar su solicitud de acomodo fundamentada en una política del patrono.

Es, a nuestro juicio, claro que el TPI no erró al desestimar la reclamación al amparo de la Ley Núm. 80, *supra*. La negativa del señor Iriarte Graña a cumplir con una política patronal razonable, adoptada dentro de un contexto extraordinario de salud pública, unida a la ausencia de una exención aprobada, constituyó base legítima y no caprichosa para la terminación de empleo. Resolver lo contrario equivaldría a ignorar la facultad patronal de establecer normas razonables dirigidas al buen y normal funcionamiento institucional, particularmente en un centro universitario vinculado a la formación en ciencias de la salud.

Con respecto al planteamiento esgrimido por los Apelantes sobre la necesidad de que se evaluara la sinceridad religiosa del señor Iriarte Graña en un juicio plenario como parte de la reclamación incoada de discrimen pues ello implica cuestiones de credibilidad que impedía la disposición sumaria del caso, debemos enfatizar en lo resuelto por el Tribunal Supremo en Báez García v. Cooper Labs., Inc., 120 DPR 145 (1987), a los efectos de que una vez se determina que la terminación del empleo estuvo basada en justa causa, se hace innecesario evaluar los méritos del planteamiento de la reclamación de discrimen. Íd., pág. 155. Así pues, al haber concluido que el despido del señor Iriarte Graña Guzmán fue uno justificado, se hace

innecesario analizar si la terminación de su empleo se debió a actuaciones discriminatorias.

En suma, no identificamos controversias reales y sustanciales sobre hechos materiales que justificaran la celebración de un juicio. La prueba documental demuestra que la universidad implantó una política general, a base de una determinación del Gobierno de Puerto Rico como parte de una emergencia salubrista, proveyó mecanismos de acomodo, sostuvo un proceso interactivo, concedió extensiones y actuó conforme a criterios previamente establecidos y conocidos por el Apelante y, a pesar de ello, este último incumplió.

## IV.

Por los fundamentos que anteceden, los cuales hacemos formar parte íntegra del presente dictamen, *confirmamos* la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones